# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# EASTERN DIVISION

| | |
|---|---|
| **CHRISTY S. IVEY,** ] | |
| ] | |
| **Plaintiff,** ] | |
| ] | |
| **v.** ] | |
| ] | **Case No.:  1:05-cv-0181-VEH** |
| **NORTHEAST ALABAMA** ] | |
| **REGIONAL MEDICAL** ] | |
| **CENTER,** ] | |
| ] | |
| **Defendant.** ] | |

---

## MEMORANDUM OF OPINION

## I.  Introduction.

The Court has for its consideration Defendant Northeast Alabama Regional Medical Center's (hereinafter referred to as "NEARMC") Motion for Summary Judgment filed November 14, 2005, (doc. 27), and NEARMC's Motion to Strike (doc. 40), filed January 10, 2006.  Plaintiff Christy S. Ivey filed suit against NEARMC alleging violations of both Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e, *et seq.* ("Title VII"), and 42 U.S.C. § 1981.  (doc. 1)  The issues raised in both motions have been fully briefed by both parties and are now ripe for decision.  Upon full consideration of the legal evidence and arguments presented, NEARMC's motion

for summary judgment is due to be **GRANTED** in all respects.  Further, having reviewed Defendant's motion to strike and finding that it does not alter or affect the summary judgment determination, the Court finds that this motion should be **DENIED** as **MOOT**.

II.    **Facts.**[1]

Ms. Ivey, an African American female, was hired by NEARMC, a regional hospital located in Anniston, Alabama, as a Unit Secretary in August 2000.  Ivey worked as a Unit Secretary until April, 2002, when she was promoted to the job of Human Resources Assistant.

During her tenure as HR Assistant, Ivey both received complaints concerning her conduct and complained to her supervisor, Director of Human Resources David Pritchett, regarding discrimination against minority applicants during NEARMC's hiring process.  Following a meeting with NEARMC management to discuss the complaints against Ivey, Ivey took a recommended leave of absence, from approximately August 17, 2004, to September 16, 2004, during which time a

---

[1]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, their respective responses to those submissions, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in factor of the nonmoving party. *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts. *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Recruiter position became available.  Administrative Assistant Vickie McGlaughn assumed the Recruiter responsibilities.

Subsequently, on September 30, 2004, according to NEARMC, temporary NEARMC employee Misty Woods, an African American female, complained to NEARMC management that when Woods visited HR to inquire about a job interview, Ivey stated that Woods "need not go through the interview because she was the wrong color for that department."  After learning of Woods' complaint, Pritchett suspended Ivey pending further investigation.   NEARMC ultimately terminated Ivey's employment on October 11, 2004.

Prior to Ivey's termination, the Benefits Manager position in HR became available.  Vice President of Human Resources, Michael Simms, hired Denise Meadows, a white female, for the position on or about October 22, 2004, after Ivey's employment had been terminated.

Ivey filed a complaint with the EEOC, alleging race discrimination and retaliation.  On October 28, 2004, the EEOC issued a right to sue letter, but did not make a determination of discrimination.

### III.   Standard of Review.

Under Fed. R. Civ. P. 56(c), summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the

affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *See Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986); *Chapman v. AI Transport*, 229 F.3d 1012, 1023 (11th Cir. 2000). The party asking for summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings or filings which it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323. Once the moving party has met its burden, Rule 56(e) requires the non-moving party to go beyond the pleadings and, by its own affidavits, or by the depositions, answers to interrogatories, and admissions on file, designate specific facts showing that there is a genuine issue for trial. *Celotex*, 477 U.S. at 324.

The substantive law will identify which facts are material and which are irrelevant. *Chapman*, 229 F.3d at 1023; *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). All reasonable doubts about the facts and all justifiable inferences are resolved in favor of the non-movant. *Chapman*, 229 F.3d at 1023; *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1115 (11th Cir. 1993). A dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *Chapman*, 229 F.3d at 1023. If the evidence is merely colorable, or is not significantly probative, summary judgment may be

granted. *Anderson*, 477 U.S. at 249.

The method used by the party moving for summary judgment to discharge its initial burden depends on whether that party bears the burden of proof on the issue at trial. *See Fitzpatrick*, 2 F.3d at 1115-17 (citing *U.S. v. Four Parcels of Real Property*, 941 F.2d 1428 (11th Cir. 1991)(*en banc*)). If the moving party bears the burden of proof at trial, then it can only meet its initial burden on summary judgment by coming forward with positive evidence demonstrating the absence of a genuine issue of material fact; i.e. facts that would entitle it to a directed verdict if not controverted at trial. *Fitzpatrick*, 2 F.3d at 1115. Once the moving party makes such a showing, the burden shifts to the non-moving party to produce significant, probative evidence demonstrating a genuine issue for trial.

If the moving party does not bear the burden of proof at trial, it can satisfy its initial burden on summary judgment in either of two ways. First, the moving party may produce affirmative evidence negating a material fact, thus demonstrating that the non-moving party will be unable to prove its case at trial. Once the moving party satisfies its burden using this method, the non-moving party must respond with positive evidence sufficient to resist a motion for directed verdict at trial.

The second method by which the moving party who does not bear the burden of proof at trial can satisfy its initial burden on summary judgment is to <u>affirmatively</u>

show the absence of any evidence in the record in support of a judgment for the non-moving party on the issue in question.  This method requires more than a simple statement that the non-moving party cannot meet its burden at trial but does not require evidence negating the non-movant's claim; it simply requires the movant to point out to the court that there is an absence of evidence to support the non-moving party's case.  *Fitzpatrick*, 2 F.3d at 1115-16.  If the movant meets its initial burden by using this second method, the non-moving party may either point to evidence in the court record, overlooked or ignored by the movant, sufficient to withstand a directed verdict, or the non-moving party may come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency.  However, when responding, the non-movant can no longer rest on mere allegations, but must set forth evidence of specific facts.  *Lewis v. Casey*, 518 U.S. 343 (1996) (citing *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 561 (1992)).

## IV.    Discussion.[2]

A plaintiff may employ direct, circumstantial, or statistical evidence to prove intentional discrimination. *Standard v. ABEL Serv., Inc.,* 161 F.3d 1318, 1330 (11th Cir. 1998). Plaintiff has offered no direct or statistical evidence and thus must rely on circumstantial evidence in an effort to prove her case. Title VII claims based upon circumstantial evidence are reviewed by the Court by applying the three-step burden shifting analysis set out in the United States Supreme Court cases of *McDonnell*

---

[2]As NEARMC states in its reply brief, "Plaintiff offers little, if any, argument in support of her response to defendant's summary judgment motion." (doc. 38 at 2.) In fact, absent the relevant legal principles that she cites, Plaintiff's entire "argument" consists only of the following:

When the aforesaid legal principles are applied to the facts in the instant case, it is clear that summary judgment must be denied.

Plaintiff's sworn testimony in her deposition plus the Affidavit of Plaintiff show that the Plaintiff was discriminated against based on her race and was the subject of retaliation by the defendant for complaining about unfair and unjust employment practices. Plaintiff also encountered a hostile work environment at the defendant.

Plaintiff was in the protected class in that she is and was an African American.

The reasons given by the Defendant in their termination letter to the Plaintiff should be rejected as a pretext for discrimination.

The management at NEARMC participated in creating the hostile work environment, participated in the discrimination and failed to take measures to remedy the discrimination. The name called was so accepted that one employee felt that she could and actually did physically hit the plaintiff in the face. I hope the Court feels that their face was slapped when reviewing the conduct that the defendant allowed to go on.

Nonetheless, to the extent that NEARMC argues that Ivey's failure to formulate arguments entitles the defendant to summary judgment on Plaintiff's claims, such argument is in error. A court cannot base the entry of summary judgment on the mere fact that the motion is unopposed, but rather, must consider the merits of the motion. *See Dunlap v. Transamerica Occidental Life Ins. Co.*, 858 F.2d 629, 32 (11th Cir. 1988) (per curiam).

*Douglas Corp. v. Green*, 411 U.S. 792 (1973), and *Texas Dept. of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981).

The analysis for claims arising under § 1981 parallels the analysis for Title VII. Under this analysis, a plaintiff must first establish a *prima facie* case of discrimination. *Cooper v. Southern Co.* 390 F.3d 695, 724-25 (11th Cir. 2004) (citing *Reeves v. Sanderson Plumbing Prods., Inc.* 530 U.S. 133, 142 (2000)). Once the plaintiff has met the *prima facie* case requirement, the defendant must then "rebut by offering a legitimate, non-discriminatory reason for the allegedly discriminatory act." *Id.* This burden is "exceedingly light . . . . At this stage of the inquiry, the defendant need not persuade the court that its proffered reasons are legitimate; the defendant's burden is merely one of production, not proof." *Id.* at 725 (quoting *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir. 1983) (citation and internal quotation marks omitted)). Assuming the defendant successfully rebuts the plaintiff's claim, "the presumption of discrimination is eliminated," and the burden returns to the plaintiff to produce evidence sufficient to permit a reasonable factfinder to conclude that the reasons for the adverse employment action as articulated by the employer were a mere pretext for discrimination. *Burdine*, 450 U.S. at 253 ("The ultimate burden of persuading the trier of fact that the defendant intentionally discriminated against the plaintiff remains at all times with the plaintiff.") If the

plaintiff fails to produce such evidence or fails to establish a *prima facie* case of racial discrimination altogether, the employer is entitled to summary judgment on the plaintiff's claim, assuming no other evidence of discrimination exists. *Cooper*, 390 F.3d at 725 (citing *Chapman v. AL Transp.,* 229 F.3d 1012, 1024-25 (11th Cir. 2000)).

### A.     Failure to Promote.

Ivey claims that, in violation of Title VII and § 1981, she was not promoted to the positions of Recruiter and Benefits Manager.  The initial burden of establishing a *prima facie* case for a failure to promote claim requires a plaintiff to show: (1) that she is a member of a racial minority; (2) that she was qualified to perform the position she sought; (3) that she was rejected for that position; and (4) that the employer either filled the position with a person outside the protected class or left the position open. *See Sledge v. Goodyear Dunlop Tires North America, Ltd.*, 275 F.3d 1014, 1015 n. 1 (11th Cir. 2001) (citing *McDonnell Douglas*, 411 U.S. at 802).  NEARMC contends that Ivey has failed to establish a *prima facie* case of discrimination because she is unable to show that a Recruiter position existed or that she was qualified for the position of Benefits Manager.  (doc. 28 at 18 & 19.)  Furthermore, NEARMC avers that it has offered a legitimate, nondiscriminatory reason why a non-African American comparator was hired instead of the plaintiff.  NEARMC argues that Ivey

has not met her burden to rebut its legitimate non-discriminatory reason and has also failed to produce substantial evidence that the decision-maker was motivated by discriminatory animus.

> 1.   Recruiter.

With respect to the Recruiter position, NEARMC contends that "plaintiff cannot establish a *prima facie* case because there was no available promotion." (doc. 28 at 18.)  According to NEARMC, "[w]hen [the outgoing Recruiter] turned in her [two weeks] notice, [Vice President] Simms, who was instructed to reduce the number of employees in the HR department, made the decision not to hire another Recruiter, but rather to have [Administrative Assistant Vickie] McGlaughn, who had been performing Wilson's duties while Wilson was on maternity leave, assume these responsibilities." *Id.* at 17-18.  According to Ivey, however, "the Administrative Secretary position was eliminated and Vickie McGlaughn was moved into the Recruiter position." (doc. 36 at 6.)  Ivey contends that "Vickie McGlaughn had turned in her two week notice and Mike Simms talked her into not leaving but instead to take the Recruiter position with an increase in pay." *Id.*

Despite this contention, however, Ivey has not established that there was indeed a promotional opportunity available.  *See Holifield v. Reno*, 115 F.3d 1555 (11th Cir. 1997) ("[A plaintiff's] conclusory assertions…in the absence of supporting

evidence, are insufficient to withstand summary judgment.").  At most, the evidence shows that McGlaughn assumed additional duties upon Wilson's departure.  While changes in job responsibilities can constitute promotions in certain instances, Ivey has not produced any evidence that the additional duties assumed here amounted to the "kind of recognition and achievement that a promotion typically implies."[3]  *Davis v. Town of Lake Park, Fla.*, 245 F.3d 1232, 1244.  Having failed to show the existence of an actual promotion, Ivey cannot establish a *prima facie* case.

Even assuming, however, that the Recruiting position constituted a promotion, Ivey has not offered "'significant probative evidence' on the issue [of pretext] to avoid summary judgment."  Specifically, Ivey has not established that the legitimate reason advanced by NEARMC for selecting McGlaughn is really a pretext for discrimination.  Because Ivey cannot establish either a *prima facie* case of discrimination or pretext, NEARMC is entitled to summary judgment on Ivey's claims

---

[3]Although, as evidence in support of her claim that a promotion existed, Ivey alleges in ¶ 9 of her affidavit that McGlaughn received an increase in pay, she fails to provide specific facts from the record to support her claim.  An affidavit opposing summary judgment must set forth specific facts to show why there is issue for trial; conclusory allegations without specific facts have no probative value. *Leigh v. Warner Bros. Inc.,* 212 F.3d 1210 (11th Cir. 2000).  Accordingly, Ivey's claim that McGlaughn received an increase in pay cannot create a genuine issue of material fact as to whether a promotional opportunity existed, and thus cannot defeat summary judgment.

for failure to promote with regards to the Recruiter position.[4]

### 2.    Benefits Manager.

Regarding the Benefits Manager position, NEARMC argues that Ivey cannot demonstrate a *prima facie* case because "plaintiff's employment had been terminated for job misconduct at the time [the comparator] was hired for the job.  Therefore, plaintiff cannot demonstrate that she was qualified for the job."  (doc. 28 at 19.)  It is undisputed that "Simms selected Denise Meadows (W) for the Benefits Manager job on or about October 22, 2004, after plaintiff's employment with NEARMC had been terminated."  (doc. 28 at 10.)  Having failed to contest NEARMC's assertion that her employment had been terminated at the time of the hiring decision, Ivey cannot demonstrate that she was qualified for the promotion because, by her own admission, she was no longer employed with NEARMC.  (*See* Non-moving party's Response to the Moving Party's Statement of Material Facts at 11; doc. 28, Ex. A at 60).

Assuming Ivey had established a *prima facie* case of race discrimination for failure to promote, NEARMC would nonetheless be entitled to summary judgment. Once the Court finds that a plaintiff has established his or her *prima facie* case, the

---

[4]According to NEARMC, McGlaughn had been performing both her job and the Recruiter responsibilities while the outgoing Recruiter was on maternity leave.  NEARMC has pointed to evidence that Simms did not consider Plaintiff Ivey, or anyone else, to assume these responsibilities because unlike McGlaughn, Ivey had not been performing these tasks.  Ivey has made no attempt to show that NEARMC's explanation for selecting McGlaughn is a pretext for discrimination.

burden shifts to the defendant to provide legitimate, non-discriminatory reasons for making the employment decision. NEARMC argues that the comparator, Denise Meadows, was selected as Wilson's successor because Meadows was "considered … to be the best qualified." (doc. 28 at 20.) NEARMC supports this contention by pointing to Simms' affidavit, in which Simms cites several factors which influenced his hiring decision, including Meadows' degree in Human Resources Management and her application for employment. (doc. 28, Ex. B ¶ 10.) Simms further states that he "considered Ms. Meadows to be the best qualified based on her interview and her prior good work performance in the exact same job." (doc. 28, Ex. B ¶ 10.)

Ivey disputes NEAMRC's contention that Meadows was more qualified by stating that "Simms and other employees at the hospital talked about what a bad job Meadows did in the Benefits Manager position." (doc. 36 at 12.) As such, Ivey contends, "[b]ased on Simms' own words, Meadows would not have been a good choice because of her previous work experience at the hospital." *Id*. Further, despite admitting to knowing nothing about Meadows' prior work experience, Ivey testified that she was in fact more qualified for the position than Meadows "due to the fact [she] was within three months of getting [her] master's degree in human resources and [a co-worker] had been showing [her] the [Benefits Manager] job." (doc. 28, Ex. A at 62).

As discussed above, however, evidence in the record indicates that Meadows was considered to be the best qualified candidate based on factors, including her interview.  As such, in the absence of any supporting evidence, Ivey's conclusory assertions are insufficient to withstand summary judgment.  Ivey has thus failed to demonstrate pretext with respect to NEARMC's legitimate, nondiscriminatory reasons for the selection of Meadows for the Benefits Manager position.  Therefore, summary judgment is due to be granted with respect to Plaintiff's failure to promote claim.

### B.    Retaliation.

Under the burden shifting *McDonnell-Douglas* framework, a plaintiff asserting a  claim of discrimination  based on retaliation must show: (1) that she engaged in a protected activity; (2) that she suffered an adverse employment action; and (3) that there was a causal link between the protected activity and the adverse action. *Maniccia v. Brown*, 171 F.3d 1364, 1369 (11th Cir. 1999).  With respect to Plaintiff's *prima facie* case, NEARMC argues that Ivey cannot demonstrate that she engaged in a protected activity.

Plaintiff Ivey claims to have "brought to the attention" of NEARMC management " the way in which applicants with "African names" were being "passed over" for certain positions  (doc. 28, Exhibit A at 65-71.) and  the discriminatory acts

of her supervisor, David Pritchett (doc. 1.)  NEARMC argues that these alleged complaints regarding NEARMC's "unfair and unjust employment practices" (doc. 28 at 21) do no constitute statutorily protected activity  because "plaintiff cannot demonstrate that her alleged complaints were made in good faith or demonstrated an objectively reasonable belief in race discrimination." (doc. 28 at 26.)  Specifically, NEARMC states that "plaintiff… admits that [the applicants NEARMC allegedly passed over] included both black and white individuals, demonstrating that the complaints were not truly complaints of alleged racial discrimination." *Id*.  Further, NEARMC contends, "[P]laintiff's alleged complaints about Pritchett did not include complaints of racial comments and plaintiff never reported the alleged use of the 'n-word.'" *Id*.  Accordingly, NEARMC argues, "plaintiff cannot demonstrate that her alleged complaints were made in good faith or demonstrated an objectively reasonable belief in race discrimination…in light of the fact that she did not specifically complain of racial comments and because the alleged applicants being passed over included both black and white applicants." *Id*.

Despite NEARMC's contentions, Ivey's complaints regarding discrimination against minority applicants constitute a protected activity.  First, for the purposes of establishing a *prima facie* case of retaliation under Title VII, "statutorily protected expression" includes the filing of informal complaints. *Shannon v. BellSouth*

*Telecomms., Inc.*, 292 F.3d 712, 716 n.2 (11th Cir. 2002).  ("Title VII protects not just 'individuals who have filed formal complaints,' but also those 'who informally voice complaints to their superiors or who use their employers' internal grievance procedures.'").  Second, regarding the alleged passing over of applicants, Plaintiff Ivey testified as follows:

> Q:   [Y]ou said that the recruiters, Kim Wilson and Angela Beichley, would put certain applications, if they had names like Laquesha or Deqwan in an [Not Applicable] box?
> A:   Yes, ma'am
>
> * * *
>
> Q:   Do you remember any applicant's name other than Laquesha or Deqwan who you say got put in the box?
> A:   Other names like Taniqua or other names.  I can't remember exact names, but like European descent names that I can't even pronounce that were put in the box.
> Q:   And when you say European descent, are you talking about like from Russian or Ukraine or --
> A:   From Europe, different places in Europe.
> Q:   Okay.  So it was both names that you said were African American names and names of European descent?
> A:   That were considered minorities, yes ma'am.

(doc. 28; Ex. A at 68, 70-71.)  As evident from her testimony, Ivey's allegation cites discrimination against applicants based on race and national origin.  Title VII makes it unlawful for an employer "to discharge any individual, or otherwise to discriminate against any individual with respect to his compensation, terms, conditions, or privileges or employment, because of such individual's race, color, religion, sex, or

national origin." 42 U.S.C. § 2000e-2(a). Accordingly, the fact that the "alleged applicants being passed over included both white and black applicants" does not undermine the reasonableness of plaintiff's belief that the defendant was engaged in unlawful employment practices.

As such, in complaining about NEARMC's alleged unlawful employment practices, Ivey engaged in a protected activity. It is undisputed that she suffered an adverse employment action. No one challenges whether there was a causal link between the protected activity and the adverse action. Therefore, Ivey has met the *prima facie* case requirement under the *McDonnell Douglas* framework.

Once the Court finds that a plaintiff has established his or her *prima facie* case, the burden shifts to the defendant to provide legitimate, non-discriminatory reasons for making the employment decision. *E.E.O.C. v. Total Sys. Services, Inc.*, 221 F.3d 1171 (11th Cir. 2000); *Hairston v. Gainesville Sun Publishing Co.*, 9 F.3d 913, 919 (11th Cir. 1993) ("The burden of proof in Title VII retaliation cases is governed by the framework established in *McDonnell-Douglas v. Green*, 411 U.S. 792, 93 (1973)."). As previously mentioned, this burden is "exceedingly light" and merely requires that the defendant proffer legitimate, non-discriminatory reasons. *Cooper*, 390 F.3d at 725. NEARMC refers to the affidavits of Michael Simms and David Pritchett in support of the proposition that retaliation was not a factor in NEARMC's

decision to terminate Ivey.  It refers the Court to, *inter alia*, the Eleventh Circuit decisions in *Clark v. Coats & Clark, Inc.,* 990 F. 2d 1217, 1228 (11th Cir. 1993) and *Jones v. Gerwens*, 874 F.2d 1534, 1540 (11th Cir. 1989), for the proposition that an employer's good faith belief that an employee's performance is unsatisfactory constitutes a legitimate nondiscriminatory reason for termination.

NEARMC supports its contention that it had a good faith belief that Plaintiff Ivey  had committed misconduct by pointing to the investigation of the Misty Woods incident.  (doc. 28, Ex. C, Attachment 2).  According to a report issued by David Pritchett, the investigation spanned six days, from September 30, 2005, to October 5, 2005, and included meetings with Misty Woods, her supervisor, Cissy Martin, and Plaintiff Ivey.   At the conclusion of its investigation, NEARMC made the following determinations and recommendation:

**CONCLUSION:**
The allegation raised by Ms. Woods is very serious.  Ms. Ivey is generally the first contact employees or the public has with the Human Resources Department.  The statement alleged to have been made by Ms. Ivey is entirely inconsistent goals and philosophy of Northeast Alabama Regional Medical Center.  The fact that it is alleged to have been made by an employee in the Human Resources Department makes this matter more serious.  Further, there are concerns, outside this incident, related to Ms. Ivey's job performance and her interaction with the public.

**II. RECOMMENDATION**
Based on the allegations made, and the investigation conducted, the Hospital believes Ms. Woods.  The Hospital expects its employees to

perform their job in a professional manner and consistent with the equal employment goals of the Hospital.  Ms. Ivey's job performance and misconduct is inconsistent with these expectations.  Thus, it is recommended that Ms. Ivey's employment be terminated for job misconduct.

(doc. 26, Ex. C, Attachment 2.)

With NEARMC having met its burden of production, Plaintiff must "demonstrate that the defendant's articulated reasons for the adverse employment action is a mere pretext for discrimination." *Holifield*, 115 F.3d at 1565.  Ivey responds to NEARMC's contentions by stating that she "never told Woods that she was the wrong color for the job," and that "[t]he reasons given by the Defendant in their termination letter to the Plaintiff should be rejected as a pretext for discrimination."  (doc. 36 at 23.)  "The inquiry into pretext centers upon the employer's beliefs, and not the employee's own perception of her performance." *Id.* "Thus, where the employer produces performance reviews and other documentary evidence of misconduct and insubordination that demonstrate poor performance, an employee's assertions …are insufficient to defeat summary judgment, in the absence of other evidence." *Id.*  The Court therefore finds that NEARMC's belief that Ivey had engaged in employee misconduct constitutes a legitimate, non-discriminatory reason for terminating Ms. Ivey's employment.  Accordingly, because Plaintiff Ivey has been unable to rebut NEARMC's nondiscriminatory reason for terminating her

employment, summary judgment is due to be granted on Ivey's retaliation claim.

C.    Hostile Work Environment.

Ivey also alleges that NEARMC subjected her to "harassment, intimidation, [and] threatened with termination and racial slurs."  (doc. 1.)  She relies on the following contentions to prove the merits of her claim: (1) on several occasions, Plaintiff was denied lunch or restroom breaks, (doc. 36, Exh. 2 ¶ 4); (2) on at least one occasion, the Director of Human Resources, David Pritchett, told the plaintiff that he would "hate to boot [her] black butt out the back door" (*Id.* ¶ 6); (2) according to Ivey, two NEARMC employees referred to the plaintiff as 'that black girl' (*Id.* ¶ 28; "[t]he racial slur, the use of the "n-word," was made and another employee of the HR department heard [it]" (*Id.* ¶ 30); and, on one occasion, a white employee "confronted [plaintiff] and hit [her] in the face with a folder that was in [the employee's] hand." *Id.* ¶ 32.[5]

A plaintiff alleging a Title VII racially hostile work environment claim must establish the following elements: (1) the employee must belong to a protected group;

---

[5] NEARMC contends that at her deposition, Plaintiff, when questioned about this incident, unequivocally stated that she did not think the incident was related to race.  (doc. 28, Ex. A at 113) (Q: Do you think that the [folder] incident had anything to do with your race?  A: No.) Even considering the incident, however, NEARMC is due to be granted summary judgment on Ivey's hostile work environment claim because of Plaintiff's failure to establish that she was subject to harassment sufficiently severe and pervasive as to alter the terms and conditions of her employment. Thus, for the purposes of this analysis, the folder issue is irrelevant.

(2) the employee must have been subjected to harassment; (3) the harassment must have been based on the race of the employee; (4) the harassment must have been sufficiently severe or pervasive to alter the terms and conditions of employment; and (5) there must be a basis for holding the employer liable for the harassment, either directly or indirectly.  *Miller v. Kenworth of Dothan, Inc.*, 277 F.3d 1269 (11th Cir. 2002); *Mendoza v. Borden, Inc.*, 195 F.3d 1238 (11th Cir. 1999) (applying these factors in the context of a hostile environment sexual harassment claim).  NEARMC claims that Ivey cannot show that she was subjected to harassment sufficiently severe and pervasive as to alter the terms and conditions of the employment.

Harassing conduct is severe or pervasive if it results in (1) an environment that a reasonable person would find hostile or abusive; and (2) an environment that the victim subjectively perceives to be abusive.  *Harris*, 510 U.S. at 21-22.  In evaluating the objective severity of the harassment, the Eleventh Circuit has considered, among other factors: (1) the frequency of the conduct; (2) the severity of the conduct; (3) whether the conduct is physically threatening or humiliating, or a mere offensive utterance; and (4) whether the conduct unreasonably interferes with the employee's job performance.  *Miller*, 277 F.3d at 1276 (citing *Allen v. Tyson Foods*, 121 F.3d 642, 647 (11th Cir. 1997).

Based on the above factors, even if true, Ivey's allegations do not rise to the

level of severity or pervasiveness necessary to establish a hostile work environment claim.  *See Mendoza*, 195 F.3d 1247-53.  As previously discussed, Ivey alleges that she was occasionally denied lunch and restroom breaks and was subjected to a handful of derogatory comments during her four-year employment at NEARMC.  As such, the bulk of the evidence offered in support of Ivey's claim is, at most, evidence of "mere offensive utterances" and isolated incidents. Further, there is no evidence showing that the alleged conduct unreasonably interfered with Ivey's job performance.  Considering the totality of the circumstances, including the infrequency of the alleged events and the lack of evidence that these events had any impact on Ivey's day-to-day activities, a jury could not find Ivey has been subjected to an objectively severe hostile work environment at NEARMC.  Accordingly, this Court concludes that Ivey did not experience harassing conduct that was so objectively severe and persuasive as to alter the terms and conditions of her employment.  For these reasons, summary judgment is due to be granted on Ivey's hostile environment claim.

V.     Conclusion.

For the reasons stated above, NEARMC's motion for summary judgment is due to be **GRANTED** in all respects.  NEARMC's motion to strike is **DENIED** as **MOOT**.  A separate order in conformity with this opinion will be entered.

**DONE** this the 20th day of April, 2006.

**VIRGINIA EMERSON HOPKINS**
United States District Judge